FRANKFURT KURNIT KLEIN & SELZ, P.C.
Craig B. Whitney, Esq.
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
*Attorneys for Casper Sleep, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

|  |  |  |
|---|---|---|
| CASPER SLEEP, INC., | : | |
| | : | Case No. |
| Plaintiff, | : | |
| | : | **COMPLAINT** |
| -against- | : | |
| | : | **JURY DEMAND** |
| JACK MITCHAM and MATTRESS NERD LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------------X

Plaintiff Casper Sleep, Inc. ("Plaintiff" or "Casper"), by its attorneys, Frankfurt Kurnit

Klein & Selz, PC, for its complaint (the "Complaint") against defendants Jack Mitcham and

Mattress Nerd LLC (collectively, "Defendants" or "Mitcham") alleges as follows:

### NATURE OF THE ACTION

1.      This is an action arising from Defendants' false advertising and deceptive acts and

practices under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Section 349 of the

New York General Business Law.

2.      In early 2014, Casper launched as an innovative new sleep start-up, radically

disrupting the traditional mattress industry with one mattress sold directly to consumers online

with a risk free in-home trial—eliminating mattress stores and their inflated prices.  Casper's

unique approach sought to create a universally comfortable product with a sleek design delivered

straight to your door without the need for commission-driven salespeople working in retail

stores.  Instead, Casper offers its mattresses directly to consumers via its e-commerce website.

Casper immediately struck a chord with consumers, generating $1 million in sales within its first

month.

3.      Casper's award-winning and patent-pending mattress design was the result of

significant research and development.  In creating "one perfect mattress" for consumers, Casper

tested more than 100 support foam samples, created more than 100 prototypes and conducted

more than 3,200 hours of rigorous product testing.  Collectively, Casper's best-in-class product

design team has won numerous awards and holds more than 50 patents.

4.      Casper's success has spawned numerous "imitators" that duplicate Casper's

innovative approach without investing in any of the innovations that led to Casper.  TechCrunch,

a leading media publication, recently noted that since Casper launched in April 2014, "[t]he past

two years have also seen a boom in mattress startups . . . Casper does seem to have started a

trend."  As competition in online mattress sales has increased, so has demand for independent,

unbiased reviews of the many direct-to-consumer mattresses that are now available.  Because

consumers rely on these reviews in lieu of testing the mattresses themselves prior to purchase,

the honesty and integrity of the reviews and reviewers are essential to avoid consumer deception.

5.      Through his website, "The Mattress Nerd," Mitcham holds himself out as an

independent and unbiased mattress reviewer.  In reality, however, Mitcham collects sales

commissions from Casper's competitors, whose products Mitcham reviews.  Mitcham's reviews

steer The Mattress Nerd readers toward products from whose makers Mitcham receives these

benefits, and away from products—such as Casper mattresses—from whose makers Mitcham

receives nothing.  In this way, Mitcham is part of a surreptitious economy of affiliate scam

operators who have become the online versions of the same commission-hungry mattress

salesmen that online mattress shoppers have sought to avoid.

6.      Consumers are entitled—and indeed, are required—to be informed about Mitcham's material connections to Casper's competitors so that they may weigh the value of Mitcham's endorsements.  But Mitcham's reviews are devoid of any clear and conspicuous disclosures notifying consumers of these practices.

7.      Casper—and the consumer—has suffered considerable injury as a result of Mitcham's undisclosed connections to Casper's competitors.  By falsely conveying that his reviews are independent and unbiased, Mitcham has damaged Casper's reputation, distorted the consumer marketplace, and deprived Casper of significant revenue due to lost sales.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states. This Court has supplemental jurisdiction over Casper's state law claim pursuant to 28 U.S.C. § 1367(a) because it is so related to Casper's Lanham Act claim that it forms part of the same case or controversy.

9.      This Court has personal jurisdiction over Defendant pursuant to CPLR § 302(a)(3) because Mitcham's tortious acts have caused injury to Casper within New York, and Mitcham has otherwise committed acts giving rise to personal jurisdiction under CPLR § 302(a)(3)(i)-(ii).

10.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claim occurred in the Southern District of New York.

## PARTIES

11.     Plaintiff Casper is an e-commerce company that sells mattresses and other sleep products.  Casper is incorporated in Delaware, with its principal place of business at 45 Bond Street, New York, New York.

12.     Upon information and belief, defendant Jack Mitcham is the proprietor of http://www.mattressnerd.com ("Mattress Nerd"), a website that features his reviews of mattresses.  Upon information and belief, Mitcham resides in Massachusetts.

13.     Upon information and belief, defendant Mattress Nerd LLC is a Massachusetts limited liability company with its principal place of business in Quincy, Massachusetts.  Upon information and belief, Jack Mitcham uses Mattress Nerd LLC as a vehicle to operate The Mattress Nerd.

## FACTUAL ALLEGATIONS

### *Casper's Early Success*

14.     Casper launched in 2014 with a single, state-of-the-art foam mattress product, sold directly to consumers through a simple online interface on http://www.casper.com.  Once purchased, a Casper mattress is compressed and shipped in a box the size of a mini-fridge and small enough to fit in the trunk of a car or be delivered by bicycle messenger.

15.     Casper also has a free, no-hassle return policy: a mattress purchaser has a 100-day trial period, at any point during which he or she may return the mattress for a full refund.  Once notified of the return, Casper arranges for a courier to pick up the mattress for donation or recycling.

16.     Casper's business model eliminates the deceptive sales tactics and inflated, commission-driven prices commonly found in mattress retail stores.  Removing this middleman has contributed to Casper's success: the company earned over $100 million in revenue during its

first calendar year and has attracted nearly $70 million in investment. *Fast Company* has named Casper one of its Most Innovative Companies in the World and *TIME* crowned the Casper mattress one of the Best Inventions of 2015.

17.     Casper's ascent has also inspired competitors. Since Casper pioneered the digital mattress marketplace, dozens of online mattress retail start-ups have followed suit, selling mattresses on their own websites and on third-party platforms such as Amazon.

### *The Rise and Regulation of Affiliate Marketing*

18.     In the wake of Casper's success and disruption of the traditional retail model, consumers can now purchase a wide variety of competing mattresses without ever stepping foot in a mattress store. As a result, online reviews have become an increasingly prominent part of the online mattress marketplace: consumers seek out and rely on these reviews to compare competitors and make purchasing decisions.

19.     The important role of reviewers—on their review websites and on social media platforms—is pervasive across the online retail industry. As the power of reviewers to influence purchase decisions has grown, retailers have partnered with reviewers to make reviewing products a profitable business in itself.

20.     One way that retailers help reviewers monetize their reviews is through "affiliate marketing," whereby the retailer rewards the reviewer or other "affiliate" for each purchase or website visit that the affiliate secures.

21.     The use of "affiliate links" and "coupon codes" is a common form of affiliate marketing. An affiliate link is a unique URL leading to a retailer's website that contains an identifier associated with the affiliate. When a customer arrives at the retailer's website by clicking on this URL link, any resulting purchases are tracked and the affiliate receives a commission on each purchase.

22.     Coupon codes have the same function as affiliate links, but work slightly differently.  Rather than a unique URL, an affiliate is provided with a unique code that consumers may enter at the time of an online purchase, often to receive a discounted price or other benefit.  When a consumer enters the code, the sale is attributed to the affiliate, who receives a commission.

23.     Affiliate marketing and related practices create relationships between reviewers and retailers that consumers would not reasonably expect.  As a result, regulators of commerce, most notably the Federal Trade Commission (FTC), have made clear that these practices are unfair and deceptive if they are not effectively and conspicuously disclosed.

24.     In 2009, the FTC issued its Guides Concerning the Use of Endorsements and Testimonials in Advertising (the "Endorsement Guides"), using its authority under Section 5 of the Federal Trade Commission Act (the "FTC Act") to regulate unfair or deceptive acts or practices in or affecting commerce.  15 U.S.C. § 45; *see* 16 C.F.R. § 255.

25.     The Endorsement Guides specifically provide that "*[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed.*"  16 C.F.R. § 255.5 (emphasis added).

26. In May 2015, the FTC released a set of answers to frequently asked questions regarding the Endorsement Guides (the "Endorsement Guide FAQs," *available at* https://www.ftc.gov/tips-advice/business-center/guidance/ftcs-endorsement-guides-what-people-are-asking and attached as Ex. A).

27.     The Endorsement Guide FAQs contain an entire section devoted to affiliate marketing.  *See id* at 18-19.  The section states that, for an affiliate disclosure to be "clear and conspicuous," the reader should be able to "see both the review containing that disclosure and the

link at the same time." *Id.* It warns that "if the product review containing the disclosure and the link are separated, readers may lose the connection." *Id.* It also makes clear that "[p]utting disclosures in obscure places—for example, buried on an ABOUT US or GENERAL INFO page . . .—*isn't good enough*." *Id.*

28.    The FTC's guidance regarding affiliate marketing and related practices reflects the fundamental legal principle that commercial speech must be true and non-misleading. As applied to business relationships between retailers and reviewers, this means that reviewers must clearly and conspicuously disclose any material connections to retailers that they have. Mitcham has utterly failed to do so, and has caused Casper significant damage as a result.

**_Mitcham's Reviews are False and Misleading_**

29.    Mitcham promotes Mattress Nerd as a source for personally informed, independent, and unbiased mattress reviews. On Mattress Nerd's "About the Mattress Nerd" page, Mitcham states that "it's difficult to find an unbiased source" for mattress information online, and that "[m]any mattress guides out there are written by the companies trying to sell you their particular mattress." *See* "About the Mattress Nerd" http://www.mattressnerd.com/about/ (last visited Apr. 29, 2016). He presents Mattress Nerd as a stark contrast to these biased reviews: as a former mattress salesman, Mitcham "know[s] the ins and outs of the mattress business" and has "switched teams to be on the side of the customer." *Id.* He promises to "help thousands [of potential mattress purchasers] a day through [his] website." *Id.*

30.    Mitcham and Casper have no affiliate relationship. Where Mitcham discusses the Casper mattress on The Mattress Nerd, he generally provides links to Casper's product page on the online retailer Amazon.com ("Amazon"). Upon information and belief, when users purchase a Casper mattress (or any other product) on Amazon after clicking on Mitcham's Amazon link,

Mitcham receives a small payment if Amazon processes the transaction.  Casper takes no part in and has no control over this arrangement with Amazon.

31.     By contrast, Mitcham *does* have direct affiliate relationships with many of Casper's competitors, offering affiliate links or coupon codes for those competitors' mattresses. Attached to this Complaint as Exhibit B is, upon information and belief, a non-exhaustive list of mattress brands for which Mitcham is an affiliate, including the relevant affiliate link or coupon code.

32.     Upon information and belief, Mitcham receives a meaningful commission whenever a consumer uses one of The Mattress Nerd's coupon codes or affiliate links listed in Exhibit B to purchase a mattress from one of Casper's competitors.

33.     In his reviews of the mattresses listed in Exhibit B, Mitcham misleadingly implies that his statements are completely independent, unbiased, and informed solely by personal experience, reinforcing his express promises of independence elsewhere on the website.  For example, Mitcham states:

- "I had a chance to sleep on a Leesa and I actually liked this mattress so much that I made it my primary mattress.  For that reason, I feel very confident in this recommendation." http://www.mattressnerd.com/leesa-review/ (last viewed Apr. 29, 2016).

- "I am pleased to report that the Leesa lives up to expectations.  That's why I made it my main mattress.  I've been sent *a lot* of mattresses to review, and this is the one I chose to sleep on every night. In short, **of all the direct-to-consumer mattresses out there, Leesa is my favorite.**" *Id.* (emphasis in original).

- "Nest Bedding is in it for the long haul.  That's why I decided to review their mattresses.  I've turned down many companies that I suspect are just looking to make quick money rather than making the best mattresses." http://www.mattressnerd.com/nest-love-bed-review/ (last viewed Apr. 29, 2016).

- "I spent a few hours on the [Yogabed] mattress and I did not notice it getting any warmer than any other mattress.  For some people, this is an issue with memory foam

mattresses, but I don't think you should get that problem with Yogabed."
http://www.mattressnerd.com/yogabed-review/ (last viewed Apr. 29, 2016).

34.      As explained in further detail below, because Mitcham fails to sufficiently

disclose his material connections to these mattress brands, Mattress Nerd readers are unable to

consider those connections in weighing the value of Mitcham's endorsements.

35.      By the same token, Mattress Nerd readers are unable to weigh the value of

Mitcham's negative statements regarding Casper, with whom he has no affiliate relationship.

36.      For example, upon information and belief, Mitcham has an affiliate relationship

with Leesa.  In his comparison of Casper against Leesa, Mitcham unsurprisingly declares that

Casper's competitor, who is compensating Mitcham, is the better mattress:  "In the final analysis,

I think Leesa is the better mattress.  It should work for a wider range of body types and sleeping

positions.  It felt better for me personally, which is why I got rid of my 6 month old, $3000

Comforpedic mattress in favor of a Leesa." http://www.mattressnerd.com/leesa-vs-casper/ (last

viewed Apr. 29, 2016).

37.      Mitcham's three-way comparison of Casper against Tuft and Needle and Saatva

(with whom he does not appear to have an affiliate relationship) is especially telling.  The

comparison was originally published in late 2014, at a time when Casper and Mitcham had an

affiliate relationship and Casper provided Mitcham with affiliate links.  At that time, Mitcham

declared Casper the winner of his three-way head-to-head. *See*

http://www.mattressnerd.com/casper-vs-tuft-and-needle-vs-saatva/ ("Of the three, I believe

that Casper has the best value for your money.") (last viewed Apr. 29, 2016).  When Casper

ended its affiliate relationship with Mitcham (and all other affiliate scam operators) in July 2015,

Mitcham "updated" his post, transforming it into a promotion for the Leesa mattress.

38.     At the top of the updated comparison, Mitcham appended, "[S]hortly after writing this, a mattress company called Leesa came out, and I feel it's an incremental improvement over Casper. . . .  Most of what I say about Casper here also applies to Leesa, but Leesa goes just slightly further."  *Id.*  In a new section entitled "Alternative solution" at the end of the comparison, Mitcham repeats the sentiment: "There's an option out that came out after I made this post called Leesa.  It's very similar to Casper, but has a little more pressure-relieving foams in the top and other minor improvements.  I recommend checking them out as an alternative to Casper."  *Id.*

39.     Although seemingly genuine and unbiased, this reversal is actually a clear indication of Mitcham's deceptive pay-to-play tactics.  The reversal was, at a minimum, influenced by Casper's termination of its affiliate relationship with Mitcham.  Mitcham, in fact, readily admitted this in an e-mail to Casper.  According to Mitcham, Casper's decision not to provide him a commission for sales "*of course, had the effect of making me less likely to recommend Casper to my readers.*"

40.     Mitcham's direction of The Mattress Nerd readers away from Casper and towards retailers with whom he has an affiliate relationship is not limited to those comparisons.  Mitcham uses his review of the Casper mattress as yet another opportunity to promote the mattress retailers who pay him commissions and feed his readers affiliate links to those retailers.  "[T]he Casper is an okay mattress," he summarizes, "but there are better options out there now.  I personally recommend the Leesa over the Casper, but there are a few other options that are also better."  http://www.mattressnerd.com/casper-review/ (last viewed Apr. 29, 2016).  Near the end of the Casper review is a section entitled "Alternatives to Casper," in which Mitcham recommends and provides affiliate links to Leesa, GhostBed, and the Nest Bedding Love Bed.

*Id.* "As long as mattresses like Leesa and the Ghost Bed are around," Mitcham concludes, "I cannot see a reason to get a Casper instead." *Id.*

41.     Mitcham's deceptive reviews extend to Mitcham's Twitter account, @MattressNerd.  On February 28, 2015, for example, Mitcham tweeted, "Just got rid of my chaise lounge and replaced it with a daybed for our Leesa #mattress. http://www.mattressnerd.com/leesa  @leesasleep/." *See* https://twitter.com/MattressNerd/status/571661969167683584 (last viewed Apr. 29, 2016).  The affiliate link redirects consumers to the Leesa website, and the tweet is accompanied by a dialog box allowing a consumer to purchase a Leesa mattress without leaving the Twitter website. Despite the FTC's guidance that affiliate links within tweets must be disclosed (*see* Ex. A at 12), Mitcham discloses nothing about his affiliate relationship with Leesa in the tweet.

42.     In sum, through his explicit and implicit representations on The Mattress Nerd and social media, Mitcham misleads consumers to believe that The Mattress Nerd reviews are independent and unbiased.  In fact, they are intended to sell mattresses made by Mitcham's affiliates.

### *Mitcham's Disclosures are Inadequate*

43.     To learn of Mitcham's affiliate relationships with Casper's competitors, a reader of his reviews would have to hunt for one of two types of disclosures on the Mattress Nerd website.  Neither of these "disclosures" cure the deception caused by Mitcham's reviews.

*The Sidebar Disclosure*

44.     First, in the sidebar of Mattress Nerd webpages, Mitcham includes the following "Affiliate Disclaimer" (the "Sidebar Disclosure"):

On my site, I will often recommend products and link to other websites.

In many of those cases, I get paid a small commission if you end up purchasing anything through those links. Unlike a mattress salesman in a store, I don't just get paid commission from one brand or one retailer; I'm an affiliate for *many* different companies, so *I can help find you great deals no matter where they are.*

**I have not been paid to write any of these articles** and all of these opinions are completely my own. I also do not accept paid advertising placement on my site.

My only compensation is when I help match a reader to the right product, and that reader makes the purchase through a link on my site. In this way, I can act as a **brand-agnostic and retailer-agnostic** salesman.

*See, e.g.*, http://www.mattressnerd.com/ (attached as Ex. C) (emphases in original).

45.     Even if the substance of the Sidebar Disclosure were sufficient (as explained below, it is not), its placement is far from clear and conspicuous. As the FTC has recognized, "[d]isclosures should **not** be hidden . . . in blocks of text people are not likely to read" or in other "hard to find places," and disclosures are not clear and conspicuous if "other elements in the ad or message obscure or distract from [them]." Ex. A at 12 (emphasis in original on website). The Sidebar Disclosure is a prime example of the kind that the FTC rejects. It appears in a grey-on-grey block of text, far from the coupon codes and affiliate links to which it relates, in a section of the webpages that visitors are likely to ignore. Indeed, when the review webpages are viewed on a smartphone or in a small window on a desktop browser, the disclosures appear at the very bottom of the webpage.

46.     Moreover, the Sidebar Disclosure is so general as to be uninformative. It fails to identify any specific affiliate relationships. Instead, Mitcham states only that he "often . . . link[s] to other websites" and "[i]n many of those cases" he receives "a small commission if you end up purchasing anything through those links." This coy language leaves readers without any knowledge of the actual links and products to which it applies.

47.     Worse, the Sidebar Disclosure affirmatively implies that Mitcham is an affiliate of virtually *all* the mattress companies whose products he reviews and therefore that his reviews

remain unbiased despite these connections.  "Unlike a mattress salesman in a store," Mitcham

asserts, "I don't just get paid commission from one brand or one retailer; I'm an affiliate for *many*

different companies, *so I can help find you great deals no matter where they are*."  (Emphasis in

original.)  Mitcham even touts himself as a "brand-agnostic and retailer-agnostic salesman" in

the Sidebar Disclosure.  These claims convey the false impression that Mitcham, by maintaining

equivalent business ties to all the subjects of his reviews, has no reason to favor any one of them.

*The Review Disclosures*

48.     The only other type of disclosure is at the very bottom of The Mattress Nerd's

individual reviews and comparisons, where Mitcham includes a "Disclaimer" (the "Review

Disclosures").  The Review Disclosures vary in their specifics, but generally state that Mitcham

is an affiliate of the relevant mattress company or companies and that Mitcham receives a "small

commission" if readers purchase a mattress through one of his affiliate links.  For example:

- "Disclaimer: I am an affiliate for Nest Bedding (just like with almost all of the
  mattresses I review), so I'd get paid a small commission if you purchase through my
  link. That's how I get to work from home writing this website. So if you do buy
  anything, I thank you very much for your support."
  http://www.mattressnerd.com/nest-alexander-review/ (last viewed Apr. 29, 2016)

- "Disclaimer: I am an affiliate for Yogabed, so I get a small commission at no cost to
  you if you purchase anything through my links. So, if you do so, I thank you for your
  support." http://www.mattressnerd.com/yogabed-review/ (last viewed Apr. 29, 2016)

- "Disclaimer: I am an affiliate for Keetsa (as well as a bunch of other companies), so I
  will get paid a small commission at no cost to you if you purchase through one of my
  links. This is how I keep my site running (and how I can afford a trip to NYC to try
  the mattresses for you). So, if you buy anything through one of my links, I appreciate
  your support." http://www.mattressnerd.com/keetsa-review/ (last viewed Apr. 29,
  2016)

49.     Mitcham's Review Disclosures are completely inadequate, in part for the same

reasons as the Sidebar Disclosure.  The Review Disclosures are swept to the edges of The

Mattress Nerd's webpages, in this case appearing at the very bottom of each review.  As the FTC

has recognized, affiliates fail to satisfy their disclosure obligations by "placing [a disclosure] below [their] review or below the link to the online retailer so readers would have to keep scrolling after they finish reading." Ex. A at 18. Such disclosures "[don't] really do it because people visiting your site might read individual reviews . . . without seeing the disclosure." *Id* at 11.

50. Similarly, like the Sidebar Disclosure, the Review Disclosures often falsely imply that Mitcham acts as an affiliate for all mattress companies whose products he reviews. *See, e.g.*, http://www.mattressnerd.com/review-of-wright-bedding/ ("I am an "affiliate" for Wright Bedding (as well as a bunch of other mattress companies)"); http://www.mattressnerd.com/nest-alexander-review/ ("I am an affiliate for Nest Bedding (just like with almost all of the mattresses I review)").

51. Mitcham concedes that his affiliate relationships are the entire income stream for The Mattress Nerd and the reason for its continued existence. *See, e.g.*, http://www.mattressnerd.com/nest-alexander-review/ ("That's how I get to work from home writing this website."); http://www.mattressnerd.com/keetsa-review/ ("This is how I keep my site running (and how I can afford a trip to NYC to try the mattresses for you)."). What he critically fails to disclose, however, is that not all mattress companies are supporting his website and livelihood—primarily only the ones that he encourages the unsuspecting consumer to buy.

52. Mitcham's review of the Casper mattress, for example, contains affiliate links to Leesa, GhostBed, and the Nest Bedding Love Bed, along with Amazon links to Casper and Tuft and Needle. But in his "Disclaimer" tucked at the bottom of the comparison, Mitcham simply states, "This article includes 'affiliate links,' meaning that I'd get paid a commission if you purchased anything from them." http://www.mattressnerd.com/casper-review/ (last viewed Apr. 29, 2016). By lumping all his review subjects into a single, vague sentence, Mitcham misleads

readers into the false belief that he has equivalent relationships with all of them, including Casper.

53.     Perhaps most egregious of all, Mitcham goes as far as to "disclose" a literal falsehood in his three-way comparison of Casper, Tuft and Needle, and Saatva, stating, "*I am an affiliate for all of the companies mentioned in the article*, which means I get a small commission at no cost to you if you purchase through any of my links." http://www.mattressnerd.com/casper-vs-tuft-and-needle-vs-saatva/ (emphasis added).  Mitcham is, of course, *not* a Casper affiliate.

54.     In short, in the unlikely event that a The Mattress Nerd reader encounters Mitcham's limited disclosures of his affiliate relationships, those disclosures fail to clearly inform the reader of Mitcham's material connections to Casper's competitors, and they falsely imply or even expressly misrepresent that Mitcham has such connections with *all* of his review subjects.

### *Casper's Damages*

55.     Mitcham's deceptive and misleading reviews have caused Casper significant lost sales and reputational damages.  The reviews have also, upon information and belief, resulted in sizable financial gains for Mitcham.

56.     As discussed, Casper's innovations led to early success and strong brand recognition.  Mitcham is exploiting the goodwill and notoriety of the Casper brand to increase traffic to his website and promote Casper's competitors, thereby increasing his commissions.

57.     Mitcham's reviews feature prominently in Google search results for Casper mattress.  A Google search for "Casper vs Leesa," for example, yields Mattress Nerd's Casper review on the very first page.  *See* Ex. D.  Mitcham thereby directly interferes with potential Casper mattress sales, interposing his own false statements and misleading reviews.

58.     Upon information and belief, potential Casper mattress purchasers, including potential purchasers located in New York, have been diverted to Mitcham's false and misleading Mattress Nerd reviews through Casper-related internet searches.  As a result of being deceived into believing in Mitcham's independence and non-bias, these consumers have purchased mattresses from Casper's competitors rather than Casper.

59.     Casper estimates that Mitcham's conduct has caused it millions of dollars in lost sales to date, in addition to significant reputational harm.  Additionally, upon information and belief, Mitcham has received significant income from commissions on these misdirected sales.

**FIRST CAUSE OF ACTION**
**(Violation of Section 43(a) of the Lanham Act – 15 U.S.C. § 1125(a))**

60.     Casper incorporates Paragraphs 1 through 59 as if fully set forth herein.

61.     As set forth above, Mitcham has made false and/or misleading statements on the Mattress Nerd website, on Twitter, and in other social media, expressly and implicitly conveying that Mitcham's mattress reviews are independent and unbiased.

62.     Mitcham's false and/or misleading statements have the capacity to deceive a substantial portion of Mattress Nerd's intended audience of potential mattresses purchasers and, upon information and belief, these statements have actually deceived potential mattress purchasers.

63.     Mitcham's false and/or misleading statements are material, in that they are likely to influence consumers' mattress purchasing decisions.

64.     By publishing his false and misleading statements on the Mattress Nerd website, on Twitter, and elsewhere on the Internet, Mitcham has placed the statement in interstate commerce.

16

65.     Casper has suffered injury as a result of Mitcham's false and misleading statements, both by direct diversion of potential Casper sales and by a lessening of goodwill associated with Casper's products, in an amount to be determined at trial.

66.     Additionally, Mitcham has received revenue in the form of commissions from affiliate sales caused by his false and misleading statements, in an amount to be determined at trial.

<strong><u>SECOND CAUSE OF ACTION</u></strong><br><strong>(Violation of Section 349 of the New York General Business Law)</strong>

67.     Casper incorporates Paragraphs 1 through 66 as if fully set forth herein.

68.     As set forth above, Mitcham has made false and/or misleading statements on the Mattress Nerd website, on Twitter, and in other social media, expressly and implicitly conveying that Mitcham's mattress reviews are independent and unbiased.

69.     Mitcham has failed to sufficiently disclose his affiliate relationships with the makers of certain mattresses he reviews, information that Mitcham alone possesses but fails to provide.

70.     Mitcham's deceptive acts are directed at consumers because Mitcham incorporates them into webpages published on Mattress Nerd, which features consumer-oriented reviews of mattresses and other sleep products, and on Twitter, an immensely popular consumer-oriented social media platform.

71.     Mitcham's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

72.     Mitcham's deceptive acts affect the public interest in New York because, upon information and belief, consumers located in New York have purchased mattresses from

Casper's competitors on the basis of Mitcham's false and/or misleading statements and omissions.

73.     Casper has suffered injury as a result of Mitcham's false and misleading statements and omissions, both by direct diversion of potential Casper sales and by a lessening of goodwill associated with Casper's products, in an amount to be determined at trial.

74.     Additionally, Mitcham has received revenue in the form of commissions from affiliate sales caused by his false and misleading statements, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(a)     Finding Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Section 349 of the New York General Business Law;

(b)     Awarding damages in an amount to be determined at trial;

(c)     Awarding pre-judgment and post-judgment interest, to the fullest extent allowable at law or in equity, on all damages;

(d)     Awarding costs and disbursements of this action, including attorneys' fees; and

(e)     Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
April 29, 2016

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:   /s/ Craig B. Whitney
Craig B. Whitney

488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
cwhitney@fkks.com

*Attorneys for Plaintiff Casper Sleep, Inc.*