**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CASPER SLEEP, INC.,

                               *Plaintiff,*

    -against-

JACK MITCHAM and MATTRESS NERD
LLC,

                               *Defendants.*

Civ. Action No.  1:16-cv-03224-JSR

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

THOMPSON BUKHER LLP
75 Broad Street, Suite 2120
New York, New York 10004
(212) 920-6050

*Attorneys for the Defendants*

## Table of Contents

ARGUMENT ..................................................................................................................1

    A.   Plaintiff's Lanham Act Claim Should Be Dismissed...................................................1

          1.   Casper Lacks Prudential Standing To Bring Its Lanham Act Claim ...............2

          2.   Casper's Lanham Act Claim Fails To State A Claim Upon Which Relief Could Be Granted ...........................................................................................8

    B.   Casper' Second Cause Of Action Under Section 349 Of The New York General Business Law Should Be Dismissed..................................................................10

CONCLUSION............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

Cases

*Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir. 1974)................................. 2, 8

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999)........................ 4

*Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973)................................................................ 2

*Conopco Inc. v. Wells Enterprise, Inc.*, 2015 WL 2330115 at *6-7 (S.D.N.Y May 14, 2015).... 10

*Gottlieb Dev., LLC v. Paramount Pictures Corp.*, 590 F.Supp.2d 624, 631 (S.D.N.Y. 2008)....... 9

*Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001) 4

*Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926) .......................................................... 2

*Muhler Co. v. Ply Gem Holdings, Inc.*, 637 Fed. Appx. 746 (4th Cir. 2016) ................................ 6

*Nationwide CATV Auditing Serv., Inc. v. Cablevision Sys. Corp.*, No. 12-cv-3648 (SJF), 2013
WL 1911434, at *13 (E.D.N.Y. May 7, 2013) .......................................................................... 9

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-422 (TPG), 2014 WL
472399 at *4 (S.D.N.Y. Sept. 23, 2014)................................................................................... 10

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ............................ 10

*Time Warner Cable, Inc. v. DIRECTTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) ........................ 1

*Wall & Assocs., Inc. v. Better Bus. Bureau of Central Virginia, Inc.*, Civ. No. 1:16-cv-119, 2016
WL 3087055 (E.D. Va. May 31, 2016) .................................................................................... 6

Statutes

16 C.F.R. § 255 ............................................................................................................................... 1

Defendants Jack Mitcham ("**Mr. Mitcham**") and Mattress Nerd LLC ("**Mattress Nerd**") (collectively the "**Defendants**") submit this reply memorandum of law in further support of the Defendants' motion to dismiss the Amended Complaint of Casper Sleep, Inc. ("**Casper**" or the "**Plaintiff**") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## ARGUMENT

### A.    Plaintiff's Lanham Act Claim Should Be Dismissed

Casper incorrectly seeks to categorize Mattress Nerd's allegedly inadequate affiliate disclosures as a misleading representation of fact about Casper's products when such disclosures do not say anything about any products.  (Emphasis added.)

In a section titled "Mitcham's Disclosures Are Inadequate," the Amended Complaint quotes several disclosures and disclaimers from the Mattress Nerd website and argues that they inadequately disclosed Mattress Nerd's affiliate relationships pursuant to the Federal Trade Commission ("**FTC**") guidelines published at 16 C.F.R. § 255 (the "**Endorsement Guides**"). (Am. Compl. ¶¶ 44, 48, and 53.)  Not one of Mattress Nerd's alleged disclosures or disclaimers made a single statement about Casper or any of its products.  (*See Id.*)  Casper cannot claim that any of the Defendants' disclosures made a false claim or even implied a false claim about Casper or its products.  Nor may Casper rely on *Time Warner Cable, Inc. v. DIRECTTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) for the proposition that Mattress Nerd's disclosures were either "literally false, i.e., false on its face" or "likely to mislead or confuse consumers" because that case dealt explicitly, and exclusively, with false statements made by DIRECTTV, Inc. about the *products* of its *competitor* Time Warner Cable, Inc. unlike here where (i) Mattress Nerd is not a competitor of Casper; and (ii) Mattress Nerd is not alleged to have made any false or misleading statements about Casper's products.

It is of crucial importance in this matter that the Amended Complaint *does not* allege that

Mattress Nerd's reviews made any false or misleading statements, or even implied anything false or misleading, about Casper's products. Instead, Casper alleges that "Mitcham misleadingly implies that his statements are completely independent, unbiased, and informed solely by personal experience." (Am. Compl. ¶ 33.) The Lanham Act does not prohibit statements that imply a sense of heightened competence or knowledge about the speaker when such statements say nothing about any products whatsoever. Casper cites no law, nor can any law be cited, to support such proposition. The only law dealing with potentially misleading statements about the commercial affiliation of a speaker is promulgated under Section 5 of the Federal Trade Commission Act (the "**FTCA**"). Well-settled law is clear that the FTCA does not support a private cause of action. *See, e.g., Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926); *Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973); *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir. 1974) (the FTCA did not give competitors right to sue for unfair advertising).

Thus, as argued below, (1) Casper lacks prudential standing to bring a claim under the Lanham Act because Casper's injuries, if any, were not proximately caused by a violation of the Lanham Act; and (2) Casper has failed to state that the Defendants' alleged actions in any way violate the Lanham Act.

### 1.   Casper Lacks Prudential Standing To Bring Its Lanham Act Claim

As articulated in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2015), in order to qualify for prudential standing to bring a Lanham Act claim, Casper must allege that the harm it suffered was proximately caused by the Defendants' violation of the Lanham Act. On this point, the Amended Complaint states a blanket allegation that the Defendants' "deceptive and misleading reviews have caused Casper significant lost sales and

reputational damages." (Am. Compl. ¶ 55.) Nevertheless, the Amended Complaint does not actually allege that any statements made in the Defendants' reviews were false or misleading, but rather that the Defendants' allegedly inadequate disclosures could cause consumers to attribute greater veracity to Mattress Nerd's truthful reviews.[1]

As an initial point, even if the Defendants were somehow biased against Casper's products, and even if the Defendants somehow misled consumers into thinking that the Defendants stood as the paragon of unbiased reporting, the Defendants' reviews could not have violated the Lanham Act if they did not actually state or imply anything false or misleading about Casper's products—again, Casper does not allege that any false or misleading statements, or material omissions, were made about its products in the Defendants' reviews. Presumably, if Mattress Nerd's reviews were influenced by Casper's competitors, which is exactly what Casper alleges, and if such reviews made provably false claims about Casper's products, then pursuant to *Lexmark* Casper would have a cause of action against its competitors for paying a publication to print false statements. *Lexmark Int'l, Inc.,* 134 S. Ct. at 1390. It is instructive that Casper has not sued its competitors on any direct Lanham Act claim, but instead has chosen to focus on Mattress Nerd for what is no more than a potential violation of the FTCA.

Casper's argument that conduct that violates the FTCA can also form the basis of a Lanham Act claim (Pl.'s Op. at 10.) is a red herring tailored to imply that the Defendants are arguing that the FTCA preempts the Lanham Act. Defendants make no such argument. Rather, Defendants argue that Mattress Nerd's allegedly inadequate disclosures, which comprise the only content that the Amended Complaint directly pleads to be false and misleading, do not violate the Lanham Act. Casper's reliance on cases that inapplicably promulgate FTC guidelines as a

---

[1] We must assume that Mattress Nerd's reviews are truthful because, despite alleging that Mattress Nerd has pecuniary motivation to offer biased opinions, Casper never actually alleges that the reviews state any false facts.

basis for asserting false advertising under the Lanham Act all dealt with direct statements made about defendants' products that were competitive with the plaintiffs' products and, therefore, also violated the Lanham Act.  *See, e.g., Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001) ("defendants have marketed their opals under the terms 'synthetic,' 'laboratory-created' and '[manufacture name]-created' even though their opals do not meet the FTC guidelines for these terms"); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999) (the defendant's jewelry products were advertised as discounted in violation of FTC guidelines on discount advertising).  Casper's above-cited cases do not stand for the proposition that everything that violates the FTCA also violates the Lanham Act, but merely that the FTCA may guide whether statements made *about competitive products* are false or misleading under the Lanham Act.

Unlike in the foregoing cases, the Defendants here are not alleged to have made false or misleading statements about Casper's products.  Nor are Defendants here alleged to have made any false or misleading statements about any other products, including their own products, which may be competitive with Casper's products.  Defendants are alleged to have made misleading statements about their own business—the product review business—which is not at all competitive with Casper or its business.  To the extent that the Defendants made any misleading statements about its affiliations, such statements would have misled consumers of competitor product review websites (Defendants' consumers) rather than consumers of mattresses (Casper's consumers) because reviews published by an allegedly biased publication do not constitute false advertisement under the Lanham Act.  *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007) (publisher's failure to disclose to consumers an affiliate agreement with the plaintiff's competitor, pursuant to which the competitor exercised "a

degree of control over [the defendant's publication]," did not constitute false advertising under the Lanham Act).  If, as illustrated in *Wellnx*, total concealment of an affiliate relationship does not suffice to violate Section 43(a), it follows that *disclosure* of that relationship does not either, even if the FTC itself can use its regulatory authority to require more fulsome disclosure.  *Id.*

Casper may not rely on *Lexmark*'s recent expansion of the Lanham Act to confer claims made against non-competitors because *Lexmark* nevertheless continues to require that a Section 43(a) plaintiff "must show economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Lexmark Int'l, Inc.,* 134 S. Ct. at 1391.  The facts of Lexmark are instructive.   Lexmark sold both laser printers and the toner cartridges for its printers.  *See id*. at 1383.  Lexmark preferred to keep to itself the ability to replenish and resell depleted cartridges, and so, among other things, it "included a microchip in each [Lexmark] cartridge that would disable the cartridge after it ran out of toner; for the cartridge to be used again, the microchip would have to be replaced by Lexmark."  *Id*.  Static Control sold parts allowing companies other than Lexmark to replenish and resell Lexmark cartridges, including "a microchip that could mimic [Lexmark's]," and therefore defeat Lexmark's attempt to preclude these other companies' attempt to compete in the refurbishment market.  *Id*. at 1384.  Lexmark wrote to Static Control's corporate customers—Lexmark's competitors—"falsely advising those companies that it was illegal to sell refurbished [Lexmark] cartridges and, in particular, that it was illegal to use Static Control's products" to do so.  *Id.*

Although Static Control and Lexmark were not competitors, "Static Control alleged that Lexmark disparaged its business and products by asserting [in letters to Static Control's customers] that Static Control's business was illegal."  134 S. Ct. at 1393.  On these unique facts,

the Supreme Court held that Static Control satisfied the proximate cause test because "a defendant who seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product may be said to have proximately caused the plaintiff's harm."  *Id*. at 1393-94 (emphasis in original, citation omitted). Another example the Supreme Court gave of when a non-competitor could satisfy the test would be false assertions that a product is defective. *See id*. at 1394.

This case differs markedly from Lexmark in at least two important respects.  First, Mattress Nerd is not alleged to have contended that Casper mattresses are illegal or defective. Mattress Nerd merely opined that other mattresses are better.  (Am. Compl. ¶ 38.)  Second, whereas every microchip that Lexmark inserted into a used toner cartridge was a sale lost to Static Control, *see* 134 S. Ct. at 1394, the same is not true here.  Both Casper and its competitors offer "a risk free in-home trial" period.  (Am. Compl. ¶ 2.)  Accordingly, if a consumer bought a mattress that Defendants said they preferred, but that mattress was not to the consumer's liking, that consumer would have been right back in the market for a mattress, and less likely to be swayed by the Defendants' opinions after having followed the Defendants' recommendation and being disappointed by it.  *See, e.g., Muhler Co. v. Ply Gem Holdings, Inc*., 637 Fed. Appx. 746 (4th Cir. 2016) (no proximate cause where plaintiff "did not establish that [it] would have obtained the sale had the contractor not selected [the defendant's] product").

In a recent case building on *Lexmark—Wall & Assocs., Inc. v. Better Bus. Bureau of Central Virginia, Inc*., 2016 WL 3087055 (E.D. Va. May 31, 2016)—the court dismissed a false advertising claim that rested on a faulty proximate cause theory similar to Casper's.  The plaintiff in *Wall*, a tax settlement business, alleged that negative statements about its business appeared on the Better Business Bureau website, and that this caused the plaintiff to lose potential customers.

6

Like Casper, that plaintiff could not dispute the truth of any of the statements on the BBB's website.   Instead, again like Casper, all the plaintiff alleged was that the BBB made false statements about its rating system.   The BBB promoted its rating system "as a national, uniform, and unbiased standard," when instead, allegedly, "it is implemented by regional, independent licensees applying their own subjective, biased, and personal criteria."   *Id*. at *2.   The court held that plaintiff's claim to be too attenuated to find standing:

> To get from Point A to Point B requires the following causal chain: Defendants' statements about its own product are false and misleading ⟶ Those statements generate consumer reliance and trust in BBB reviews and accreditations ⟶ Defendants utilize that trust in selling accreditation (the commercial link) ⟶ Consumers rely on Defendants' reviews of, and statements about, Wall's business ⟶ Consumers withhold or withdraw business from Wall.   This is [] far removed from the "classic Lanham Act false-advertising claim in which one competitor directly injuries another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch."

*Id*. at *2, quoting *Lexmark*, 134 S. Ct. at 1391. Wall's only direct injury in the case, the court held, was "from the BBB's poor grades of its service."   *Id*. at *3.   And just as Casper cannot sue over true statements of fact and non-actionable statements of opinion on the Defendants' website, Wall could not sue over the "non-actionable statements of opinion" on the BBB's website.   *Id*.   "It appear[ed] that Wall, aware of that fact, has attempted to identify other statements a few steps removed in the causal chain to try to make its claim," but Lexmark's proximate cause test precluded Wall from succeeding in that attempt.   *Id*.   This Court should reach the same result when considering Casper's equivalent attempt to "identify other statements a few steps removed in the causal chain."

Where the law is clear that Defendants' allegedly inadequate disclosures, which make no reference whatsoever to Casper or its products, do not violate Section 43(a), then even if such disclosures somehow harmed Casper, it cannot stand that Casper's injuries were proximately

caused by a Section 43(a) violation (as opposed to a potential FTCA violation).  Thus, pursuant to Lexmark, Casper lacks prudential standing to assert a Lanham Act claim against the Defendants.  *Lexmark Int'l, Inc.,* 134 S. Ct. at 1390 ("[A] statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute.").

### 2.  Casper's Lanham Act Claim Fails To State A Claim Upon Which Relief Could Be Granted

Casper's opposition concedes and confirms that its Lanham Act claim is not based on the substance of the Defendants' reviews.  "Casper claims instead that Defendants' affirmative statements and material omissions are false and misleading because they give a false impression that Mitcham is an unbiased reviewer who has no incentive to rate certain mattress brands higher than others."  (Pl.'s Opp. Mem. at 12-13.)  Thus, knowing that Casper's Lanham Act claim is based solely on the Defendants' allegedly inadequate affiliate disclosures, we reiterate that Second Circuit law is clear that the Lanham Act does not impose a duty to make affirmative disclosures and that, conversely, failure to disclose material is not "false representation" under the Act.  See, e.g., *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974); *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003).

Casper's reliance on cases that purport to establish a Section 43(a) claim on the basis of a failure to disclose a material fact (Pl. Opp. Mem. at 13-14) is another red herring tailored to draw the Court's attention away from the fact that Defendants' alleged failure to adequately disclose its affiliate relationships in accordance with the FTCA is not directly relevant to any statements made about Casper or its products.  The Defendants' allegedly inadequate disclosures are only relevant to the quality of Defendants' services as a product reviewer.  At most, Casper pleads an unsupported legal conclusion that "[a]s a result of being deceived into believing in Mitcham's

independence and non-bias, these consumers have purchased mattresses from Casper's competitors."  Such "bald contentions, unsupported characterizations and legal conclusions are not well-pleaded allegations."  *Gottlieb Dev., LLC v. Paramount Pictures Corp.*, 590 F.Supp.2d 624, 631 (S.D.N.Y. 2008).  Casper is unable to plead what Casper thinks consumers would have done differently had Mattress Nerd disclosed its affiliate relationships more prominently.  Would consumers have sought out other reviewers?  Would this have made a difference in light of the fact that Casper does not contend that the substance of the Defendants' reviews are not otherwise false or misleading?  This inability to tie the Defendants' allegedly inadequate disclosures and consumers' ultimate purchasing decision further underscores the fatal flaw in Casper's Lanham Act claim.  *See, e.g., Nationwide CATV Auditing Serv., Inc. v. Cablevision Sys. Corp.*, 2013 WL 1911434, at *13 (E.D.N.Y. May 7, 2013) (mere "speculation as to consumers' possible interpretation" of a statement "fails to adequately allege that [it] was likely to affect consumers' purchasing decisions or to cause actual consumer harm").

Casper's cited cases that rule against deceptive online practices (Pl.'s Opp. Mem. at 13) are equally inapposite in that they all rule against companies deceptively promoting disparaging comments made against their competitors.  Such cases would arguably allow Casper to sue its competitors, such as Leesa, provided that Casper could prove that Leesa's affiliate relationship with Defendants influenced them to write bad reviews about Casper.  But, where Casper does not allege that the substance of Defendants' reviews is in any way false, a Lanham Act claim cannot lie as against the Defendants.  This relates back to the Defendants' argument made in sub-part 1 above, wherein Casper cannot show that its injuries, if any, were proximately caused by the Defendants' allegedly inadequate affiliate disclosures.

Casper refuses to allege that the substance of Mattress Nerd's reviews are false, but at the

same time seeks to redress an injury that could only have been caused by the substance of Mattress Nerd's reviews.  Casper cannot have it both ways and maintain its Lanham Act claim. Casper's claim for false advertising under Section 43(a) should, accordingly, be dismissed.

**B.     Casper' Second Cause Of Action Under Section 349 Of The New York General Business Law Should Be Dismissed**

Casper's opposition mischaracterizes the thrust of Defendants' Section 349 argument. Defendants do not argue that business competitors lack standing to bring a Section 349 claim. Defendants have cited well-settled New York law for the requirement that "where a corporation," as opposed to a consumer, "brings a Section 349 claim, the gravamen of the complaint must be consumer injury or harm to the public interest," and it must include "some potential danger to public health and safety."  *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-422 (TPG), 2014 WL 472399 at *4 (S.D.N.Y. Sept. 23, 2014); *accord Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995); *Conopco Inc. v. Wells Enterprise, Inc.*, 2015 WL 2330115 at *6-7 (S.D.N.Y May 14, 2015) ("[C]ourts addressing the question of harm under [§ 349] have drawn a distinction between false advertising claims that pose a danger to the consumer and those that merely encourage consumers to buy an inferior product or buy a product from one company where they may have preference to buy it from another.").

Where Casper has failed to allege that New York residents suffer from something like an epidemic of sleep deprivation (or some other public harm) as a result of Mattress Nerd promoting harmful mattresses, Casper Section 349 claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

10

Dated:  New York, New York
        July 25, 2016

             THOMPSON BUKHER LLP


By: _____
   Tim Bukher (TB1984)
75 Broad Street, Suite 2120
New York, New York 10004
Telephone: (212) 920-6050
Facsimile: (646) 349-2366

*Attorneys for the Defendants*